Wheeler, J.
1. We are of opinion that document B was admissible in evidence. It was tiie original testimonio, proved to bo tiie same which had been formerly kept among the public archives: Its removal from the proper custody is satisfactorily accounted for, and its identity proved. No suspicion is cast upon its genuineness; and, under tiie circumstances, the fact that it did not come directly from the proper custody is not regarded as an objection to its admissibility. (1 Greenl. Ev., secs. 142, 570.) It emanated from a now foreign tribunal, where tiie protocol remains, beyond the control of the parties anil authorities of this country. ' Tiie protocol is not and cannot be made an archive of tiie land office. Tiie testimonio, though denominated a second original, is still an original. It. was executed and delivered contemporaneously with the malting of the protocol. It constituted the original evidence of authority in tiie tribunal to which it was directed, and invested them with power to act in the premises. It remains with them as tiie basis of their authority and the foundation of tlicir proceedings. It was an original, as much so as a patent issued under the great seal.
This point was expressly decided by tito Supreme Court of the Republic, in the case of Smith v. Townsend, (Dallam. 569;) and the principles of that case were fully recognized and affirmed by this court, in tiie case of Houston v. Perry and Williams, (5 Tex. R., 462.) In pronouncing the opinion of tiie court in the former case, tiie chief justice, after citing authorities, said: “ From the authorities and laws to which we have referred, as well as from the facts proven in tins case, wo conclude that copies of notarial aet-s were (at the time of the execution of this instrument) regarded, in contemplation of law, as original; that they were the only-evidence of title which the party interested was entitled to retain in his possession, and that they are properly admissible for all the purposes which by the introduction of the originals themselves could bo effected.” (Dallam, 572; and see authorities cited, and 9 La. R., 526; 14 Pet. R., 340, 348.)
Proofs are made in our .courts conformably to the common-law rules of evidence. These, being tiie law of the forum, must, in general, govern. These rules are sufficiently expansive to afford some mode of proof of every existing *167 fact on which the rights of parties depend. By the common law, originals duly proved are always admissible.
There "was no objection made to the manner of proving the instrument; but the objection was general. The only question, therefore, which can be considered as presented by the bill of exceptions is. whether a document of the character and import of the present be admissible at all, however proved..
This point was also decided in the case before cited, of Smith v. Townsend. The court there confined themselves to the objections taken to the instrument at the trial. (Dallam, 572, 573.) And in Houston e. Perry and Williams, this court held that a party in the appellate court will be confined to the specific objections taken to the admissibility of evidence in the court below. This is the rule maintained by the Supreme Court of the United States, (6 Cond. R., 274,) and by the Supreme Court of Louisiana, (2 Mart. R., H. S., 270; 10 Id., 637,) where, since the change of government, tlie courts have observed tlie common-law rules of evidence. (9 La. R., 520.) Indeed, this is tiie prevailing if not the universally-received general rule, and it is the settled law of tills court.
But the document, the admissibility of whieii we are considering, was not only an original, but it was also an archive; and as such, admissible, upon tlie principles and authorities recognized by this court in the case of Lewis et al. v. The City of San Antonio, recently decided.
There may be more reason to question the admissibility of the copy from the land office, described as Document A. '
The Commissioner of the General Land Office is authorized to give certified copies, to he read in evidence, of all records, books, and papers, the legal custody of which belongs to his office. (Hurt. Dig., art. 1841.) But, on general principles, his certificate would not give legal authenticity to papers which are mere private property, and which do not belong to or constitute archives of liis office. The admissibility, therefore, of Document A must depend on tlie inquiry whether the original, of which it is a copy, be a document properly appertaining to that office, or the private property of the interested party, supposed to be in his possession or subject to his control. In the one case, the copy would be admissible; in the other, it would not. It purports to be a copy of the testimonio of a public or authentic act, passed before the al-calde, in the absence of a notary. The protocol remained with the alcalde; was a record of his office; and this, it would seem, was the document which should have been placed in the General Land Office, to become an archive of that office. (Hart. Dig., arts. 1780, 1819, 1835.) The testimonio, as wc have seen, if duly proved, would have been admissible. It appears to have been recorded in the county. Why the original or a copy from tile cornily record was not introduced, instead of a copy from file land office,-is not perceived. But whether the copy offered was rightly admitted or not, is not, as wo shall see, an inquiry on which the decision of tlie ease depends. In tlie case of Houston v. Perry and Williams, tlie subject of tlie mode of proving empresario contracts was passed upon; and in that and the case of Smith v. Townsend some general principles are stated applicable to the proof of this class of instruments, to which, for tlie present, it may suffice to refer.
2. Tlie consideration of the merits of tlie case involves the question of the validity of the defendant’s title. This must depend mainly on the presumptions arising from long-continued possession.
Within what time a grant will be presumed in favor of a continued possession was considered in tlie case of Lewis et al. v. The City of San Antonio. It will not be necessary to repeat here tlie examination of that subject. It will be seen by reference to the opiuion of the court, that, although certain rules on the subject have been established, the question still depends, in some degree, on the particular circumstances of tlie case.
“The length of time” (said the Supremo Court of tlie United States in the case of Mitchell v. The United States, 9 Pet. R., 760) “which brings a *168 given case within the legal presumption of a grant, charter, or license to validate a right long enjoyed, is not delinite, depending on its particular circumstances.”
In Landry a. Martin et al., (15 La. R., 1,) the Supreme Court of Louisiana, after mature consideration, decided that the Spanish Government recognized verbal as well as written grants to land, and that after a long-continued possession for nearly half a century, if a written grant were necessary it would be presumed. (Id., 9, 12.) And in Barclay et al. v. Howell’s Lessee, (6 Pet. R., 498,) the Supreme Court of the United States held that an uninterrupted possession of thirty years would authorize the presumption of a grant. ” Indeed, (the court, said,) under peculiar circumstances, a grant has been presumed from a possession less than the number of years required to bar the action of ejectment by the statute of limitations.” (Id., 513.)
It is in proof, by the testimony of a witness who was permitted to testify to the fact without objection, that there had a grant existed from Che Government of Spain to Menohaca for this ¡and. It was not produced; but that it may have been lost in the condition of the country, distracted by successive revolutions, the incursions of hostile Indian tribes, and the ravages of incessant wars, is not improbable. The same witness testified further, without objection, that lie had seen the papers in the compromise of a suit which toolc place between the Menohaca and the Hernandez respecting the four-league tract claimed by tile defendant, in which the right of the Hernandez was admitted.
But, apart from the positive evidence of the existence of a grant, a sufficiently long-continued possession is shown to authorize the presumption oí a grant. The evidence, we think, fally justifies the conclusion that the Hernandez, under whom the defendant claims, and whose right it is admitted he has, liad been in the continued possession of this land, claiming title, for more than half a century previous to 1S13, when they were driven o'ut from their homes and ancient possessions by the incursions of hostile savages. This possession and claim of title, unsupported by other circumstances, would be sufficient to authorize the presumption that they held by title derived from the Government. It is not reasonable to suppose that they would so long have ret ¡lined and occupied these possessions without a title, especially when we consider with what facility grants to land in the provinces were obtained.
But the presumptions arising from possession are strongly corroborated by other circumstances. The fact that nearly a century ago this land was the subject of litigation between individual claimants is a cogent circumstance in favor of the conclusion that the title had passed out of the Government. It is not probable that individuals would have litigated the title to lauds to which there had been no grant of title. The Hernandez then — in 1757 — claimed the land, by title and ancient possession, against the admitted grant to Menohaca, and it appears that the right was accorded to them by competent authority, upon certain prescribed terms and conditions. They appear to have retained possession ever after until the year 1813. The presumption, therefore, is, that the terms and conditions prescribed were complied wilh by them, and that they thereby acquired the undisputed right.
The evidence, we think, warrants the conclusion that in 1813 the Hernandez possessed the absolute title to the land ; the presumption, derived from possession. being that the possessor owns absolutely. (C. & H's. Motes to Phillips’s Ev., u. 297.) Their possession was then interrupted, but not by the Government, or any individual claiming adversely to their right. M'o adversary claim was asserted. On the contrary, it is in proof that the Spanish Government and the succeeding Governments always respected their right; that it was always respected by the surveyors and by locators, until tlm plaintiff made Ins location in 1847. Though the owners were driven from their possessions, such was the general belief and confidence in their right that no one seems ever before to liave questioned it, or thought of the possibilhy of appropriating to himself, by location, these ancient possessions. That this belief and respect *169 of the right of the Hernandez had its origin and foundation in knowledge, which then existed, of the facts, can scarcely admit of a doubt.
Note 50. — Paschal v. Perez, post, 348.
Note 51. — Pasaba! v. Perez, post, 348.
Note 52. — Lewis v. San Antonio, ante, 288.
In the interruption of the possession of the Hernández in 1813, we see nothing to repel the presumption which certainly then existed, that they were the real owners of the land. • It, at that time, was, as we must suppose, theirs to hold and dispose of; and it cannot he pretended that tho necessity which compelled them to leave it deprived them of that right.
The defendant, claiming under the Hernandez, by regular mesne conveyances of record, had been in possession nearly ten years when the plaintiff made his location. Their presumptive title is thus connected by the evidence with and upholds his paper title derived from them. And we entertain no doubt that in him is the right and title to the land.
In considering the ease on the merits, we have left out of view the certified copy from the land office of the testimonio, the admissibility of which is questionable. Had its contents been considered, there would, perhaps, have been no necessity of resorting to tbe evidence of presumptions, however satisfactory, to establish the fact of title in the defendant. Bat the admission of the copy in question, though erroneous, cannot afford a ground for reversing the judgment where the evidence is ample without it.
The principles on which the decision of this case mainly depends have been so fully considered and settled in the eases to which wc have referred, that their further discussion here is unnecessary.
We are of opinion that there is no error in the judgment, and that it be affirmed.
Judgment affirmed.