T. L. MARSALIS v. J. D. THOMAS.

No..........

**1. Contract—Waiver of Breach—Estoppel.**

The recognition of a contract as still in force by one of the parties, after its breach by the other, when induced by a promise to remedy the default, will not constitute a waiver of the breach or raise an estoppel.

**2. Practice on Appeal—Admission of Immaterial Evidence.**

Appellate courts will not reverse judgments merely because illegal testimony may have been admitted, when there is nothing to indicate that it affected the verdict, and there was sufficient legal evidence to support the verdict.

**3. Same—Assignments of Error.**

Assignments of error which merely set out instructions objected to, but do not point out wherein they are erroneous, will not be considered (Art. 1018, Revised Statutes of 1895); nor will propositions in the brief be looked to in assistance of such assignments.

APPEAL from Dallas. Tried below before Hon. EDWARD GRAY.

*Leake, Henry & Reeves*, for appellant.

*J. D. Thomas*, for appellee.

FLY, ASSOCIATE JUSTICE.—This suit was instituted by appellee to recover money paid, and to cancel two deeds made to appellant, on a contract which it was alleged had been violated and repudiated by appellant. The contract was in relation to the building and operating of a certain line of railway to certain land belonging to appellee in the suburbs of Dallas.

Appellant answered that he had complied with his contract, and began and for a long time continued to run trains over the railway, and had only ceased when appellee failed to comply with his contract. He admitted that appellee had paid to him on the contract $9100. The contract required the payment of $20,000. The case was tried with a jury, and resulted in a verdict and judgment in favor of appellee for the right of way, for two acres of land, and for the sum of $11,377.21.

We draw the following conclusions from the statement of facts:

The following contracts formed the basis of the suit:

"DALLAS, TEXAS, April 8, 1890.

"Upon the condition and for the consideration that T. L. Marsalis, of Dallas County, Texas, his associates or assigns, whoever they may be, shall build or cause to be built a line of railway to be operated by steam power or by cable or electricity from some point on the line of the Dallas and Oak Cliff railway in Dallas County, Texas, over and across a tract of 74 acres of land conveyed to J. D. Thomas by W. J. Betterton and wife on the 24th day of November, 1888, situated in the W. H. Hord survey, and into a tract of land conveyed by T. J. Oliver to said J. D. Thomas on the 13th day of July, 1889, as far south as its

center, situated in the Thomas McDowel survey, Dallas County, Texas, and thence to run westwardly on said Thomas' land to the west line of his Hopkins tract. The said line of railway to be located on said tract of land where the said T. L. Marsalis may deem proper, so that it crosses the G. C. & S. F. railroad not nearer than two hundred yards east of the bridge across Cedar Creek next to Beckly road, and shall pass up one of the ravines east of the old Hopkins residence, and shall be completed, equipped and ready for operation within twelve months from this date, to said point as far south as the center of said Thomas' Thomas McDowell tract, and the residue of said line in one year more, and shall be operated one year after completion, at least one year from this date, on a regular schedule, running at least two cars or trains each way in the morning from 6:30 a. m. to 8:30 a. m.; one at 12 m.; one at 1 p. m.; and in the afternoon two trains between the hours of 5 and 7 p. m., as near as practicable, and afterwards in a reasonable manner to accommodate the travel.

"For value received, and in consideration of the performance of the above stipulation, I promise to pay to the order of T. L. Marsalis, at Dallas, Texas, $20,000, as follows: $5,000 when one-half of the road-bed of said railroad is completed; $5,000 when the road-bed of said railway is completed; $5,000 when the ties are laid and said railway is ready for the rails, and the balance $5,000 six months after the said railway is completed as above specified.

"This agreement to draw further interest at the rate of eight per cent per annum from maturity.

(Signed)                               "J. D. THOMAS."

"I accept this agreement, and agree to perform the stipulations thereon on my part.                    (Signed)            . T. L. MARSALIS."

"DALLAS, TEXAS, April 8, 1890.

"As part of the consideration of the obligation of J. D. Thomas in the contract between him and T. L. Marsalis, delivered herewith, it is further agreed between the parties as follows:

"1. The cars on said railway provided for in said contract shall either run directly into the city of Dallas over the Dallas and Oak Cliff railway, or they shall connect with the cars of said road so as to afford as quick a transit as practicable into the city.

"2. There shall be at least four stations on the road to be built on said Thomas' land at points which may be agreeable to him, so they are practicable for stations.

"3. The said T. L. Marsalis shall furnish free tickets to the families of such persons as may purchase in the two tracts of land referred to in said obligation, lots from said J. D. Thomas from stations most convenient to their lots into the city of Dallas, for two years from date of conveyance of such lots to them, provided said conveyances shall be made within three years from date of completion of said road.

"4.    The said J. D. Thomas is to furnish T. L. Marsalis right-of-way 100 feet wide through said land.     (Signed)        T. L. Marsalis.
                                                                                                "J. D. Thomas."

"As part of the consideration for the undertaking of T. L. Marsalis in a certain agreement dated April 8, 1890, but which was delivered and became effective at the date of this agreement, in relation to the building of a line of railroad through the lands of J. D. Thomas, said Thomas hereby agrees with said Marsalis that the profits, after reserving to said Thomas $450 per acre on the said Thomas' forty acres of land in the John McDowell survey in Dallas County, the same conveyed to said Thomas by T. J. Oliver, and after paying all further expenses to be incurred in surveying and selling said forty acres, or in making such streets or other improvements thereon as the parties may think proper, shall be equally divided between the said Marsalis and said Thomas; that is to say, out of sales to be made of the forty acres, said Thomas is to have $450 per acre, and the net profits above that sum shall be equally divided between said Thomas and said Marsalis.
                                    (Signed)                  J. D. Thomas."
"June 7, 1890.

                                        "Dallas, Texas, October 22, 1890.
"This is to certify that J. D. Thomas, of even date herewith, grants right-of-way to T. L. Marsalis for the railroad through the lands of said Thomas in South Oak Cliff, including the forty acres known as the Taylor land; he owns only an half interest undivided in said forty acres, and this grant is to be construed as conveying only to the extent of his interest.    The other half is owned by said Marsalis, and he appropriates his interest in the land set out for right-of-way, to uses of the railroad, in the same manner as said Thomas appropriated his own, it being understood that any part of the 100 feet set out as right-of-way and not necessary for railroad purposes, may be used for streets.     .

"A further consideration for the grant of right-of-way by said Thomas, in addition to those named in his deed, is that said Marsalis shall furnish free tickets from points on this line of road into the city of Dallas, for families of persons to whom said Thomas may sell lots in his Betterton or Oliver lands for two years from time of sale, provided the sale be made within three years from time of completion of said road.     .
                                    (Signed)                          "T. L. Marsalis."

                                        "Dallas, Texas,  November 21, 1890.
"It was mutually agreed between the parties to the contract for building the railroad between the undersigned, that the time of the performance on both sides with stipulation in said contract, is extended for sixty days beyond the respective times fixed in the contract.
                        .          (Signed)                          J. D. Thomas,
                                            .          "T. L. Marsalis."

"DALLAS, TEXAS, December 1, 1890.

"This contract between J. D. Thomas and T. L. Marsalis witnesseth: That J. D. Thomas agrees to sell to T. L. Marsalis all that part of his land conveyed to him by W. J. Betterton in the W. H. Hord survey, Dallas County, situated between the lumber yard of Betterton & Son .and the ice factory, and also that part east of the ice factory and inside the fence of the Oak Cliff park, and extending as far south as the street running next north of the G. C. & S. F. railroad. The land set apart for the right of way for the electric railroad is not included in this sale, but the same shall be reserved for railroad and street purposes provided in deed for same from said Thomas to said Marsalis. The land sold shall be surveyed and the number of acres ascertained, and said Marsalis to pay for it at $1200 per acre, to be credited on amount to become due on subsidy said Thomas has agreed to pay for the railroad to be built by said Marsalis, by contract between the parties, as the installments of said subsidy shall mature. Signed by the parties in duplicate.

(Signed)

J. D. THOMAS,<br>
"T. L. MARSALIS."

The contracts taken together formed one contract. The railway was poorly built, and at times trains could not go over portions of it because of its bad construction. It was not operated for one year from date of its completion, and the number of trains provided for daily were not run, the free tickets were not furnished, and before the year had expired from date of completion, the road was torn up by appellant, and its use altogether discontinued. Appellee paid on the contract the sum of $9100. Appellee did not accept the road as finished.according to contract, but protested against it, and refused the balance of the subsidy until the road was placed in proper shape. After the material of the road was torn up, it was sold by appellant for $3000. It was admitted by appellant that the deeds for the right of way and for the two acres of land sold in payment on the subsidy should be cancelled. The two acres of land had been conveyed by appellee as a payment on his subsidy of $20,000, the sum of $2400 having been allowed for them. This was in addition to the payment of the $9100 cash.

It is contended in the first assignment that the court erred in admitting the statement of appellee that all the payments he made were made before the maturity of the same. If it were conceded that the testimony was improperly admitted, it would not be reversible error, as the other testimony showed that the sums were paid before they were due. Appellant stated in a contract made by him with appellee on May 15, 1891, that the money was paid before maturity, and that it was made a part of the consideration of the new contract.

It was admitted by appellant that appellee had paid him $9100, and as the jury found a verdict for a sum a little less than the $9100, with legal interest from the time it was paid, we conclude that they gave no

weight to the testimony in regard to the damages to the land, and the evidence on that question did not injure appellant.

The evidence established the fact that the road was very badly constructed, and not only that it was not in a safe condition, but that it was impossible a large part of the time to use it; therefore it was not error on that ground to instruct the jury that it was the duty of appellant to construct and operate the railroad "in a manner reasonably safe and proper." No other objection than the insufficiency of the evidence to support it was urged against the charge mentioned.

The evidence fails to satisfy us that appellee waived the defects in the grade. He objected to the manner in which it was built, and appellant assured him that while the grade was too heavy for operation by steam, electricity would overcome the difficulty, and that he intended to use that agent as a motive power. This he did not do.

None of the assignments are well taken.

The judgment will be affirmed.                              *Affirmed.*

ON MOTION FOR REHEARING.

Delivered May 20, 1896.

FLY, ASSOCIATE JUSTICE.—The evidence indicates that appellee did not repudiate the contract until he had given appellant more time than was allowed in the contract, to comply with his promises. Appellee swore that he was not satisfied with the road, and told appellant so, and the latter then represented that he would use electricity which would overcome the difficulty experienced from the use of steam. Appellee waited and recognized the contract as still in effect until he found that appellant did not intend to comply with the contract. His recognition of the existence of the contract while giving appellant time in which to comply with the contract, cannot be distorted into a waiver of his rights or raise an estoppel against him asserting them. The first time that appellant asked for money after he had virtually admitted that he was not complying with the contract, but would do so by using electricity, it was refused him by appellee on the ground that appellant had breached the contract.

The matter of waiver was a question of fact, and was fairly submitted to the jury, and it was found against appellant. There is evidence to sustain the finding.

It is admitted by appellant that appellee had paid him $9100 on the contract, and it is not contended but that appellee had the right to recover this sum from appellant, if the latter had breached the contract. That being true, if the jury found in favor of appellant at all, they were justified in finding at least for the amount paid on the contract by appellee. They did not find in excess of that sum, and being justified in finding for that sum, it must follow that the testimony in regard to the damage to the land, if it was improperly admitted, did not affect their verdict. Appellate courts do not reverse judgments merely because

illegal testimony may have been admitted in evidence, when there is nothing to indicate that it may have affected the verdict, and when it appears that there was sufficient legal evidence to support the verdict. Davis v. Loften, 6 Texas, 489; Herndon v. Casiano, 7 Texas, 322; Pridgen v. Hill, 12 Texas, 374.

There never was a refusal on the part of appellee to pay the installments as they became due, but he gave appellant full time, more than that specified in the contract, to complete the road and operate it as he had agreed to do; and when at last he saw that he would not complete the road, or operate it as he had promised, appellee refused to pay anything more on the contract, and has the right to recover the amounts he had already paid.

Appellant agreed in the lower court that appellee should recover for the right of way and for two acres of land that had been given as a payment of $2400 on the contract. Upon what ground, other than a breach of the contract by appellant, this recovery was agreed to, does not appear.

The fourth, fifth, sixth and seventh assignments of error say the court erred in giving certain charges, and then copy the clauses of the charge complained of, no effort being made to point out the errors. The statute provides that the assignments of error shall distinctly specify the grounds on which the appellant relies, and when this is not done, the error is to be considered waived by the appellate court. Article 1037, Sayles' Stats. Or, as it is put in article 1018, Rev. Stats. of 1895, "all errors not distinctly specified are waived." See also, Tudor v. Hodges, 71 Texas, 392; Pearson v. Flanagan, 52 Texas, 266. Propositions will not be looked to to assist assignments when too general. Cannon v. Cannon, 66 Texas, 685; Jackson v. Cassidy, 68 Texas, 282; Railway v. Hinzie, 82 Texas, 629.

All the law in the special charges 1 and 2 applicable to the facts were given by the court, and it was not error to refuse to give the special charges. The error complained of in the two assignments presenting error in failing to give special charges, is not pointed out. Shumard v. Johnson, 66 Texas, 73.

The thirteenth and fourteenth assignments of error are directed at the sufficiency of the evidence. We think it sufficient. Appellant never completed the road as he had contracted.

The motion for rehearing is overruled.                    *Overruled.*

Delivered May 20, 1896.

Writ of error refused.