THE PRÆTORIANS v. STRICKLAND.

No. 1415—6249.

Commission of Appeals of Texas, Section B. Dec. 30, 1933.

T. W. Davidson and J. W. Randall, both of Dallas, for plaintiff in error.

Thompson, Knight, Baker & Harris and Will C. Thompson, all of Dallas, for defendant in error.

RYAN, Judge.

Mrs. Linnie L. Strickland, as beneficiary, sued The Prætorians for $5,000 on an insurance policy which she alleged was procured by her husband, William B. Strickland, on or about April 21, 1929, he having died on May 6, 1929, and she having furnished proper proofs of death.

The Prætorians is a fraternal beneficiary association, having a lodge system with a ritualistic form of work and representative form of government organized under the laws of the state of Texas, and authorized to make provision for the payment of death benefits upon the decease of its members. Its place of business is in the city of Dallas, with authority to extend its operations by local lodges called "councils" situated in the cities, towns and villages of the various states and territories of the United States.

On April 1, 1929, the following application to Dallas council No. 1, The Prætorians, was signed by Strickland, viz.:

"I hereby apply for membership in said council and for a benefit certificate, not exceeding five thousand dollars in Class 'S.'

"Said order shall not be liable hereunder until a certificate shall have been delivered to me, while in good health, upon which all dues or fees have been paid by me, nor until I shall have been accepted as and have become a member of said order by compliance with all provisions of its constitution."

On April 5, 1929, The Prætorians wrote a policy in the sum of $5,000, payable to Mrs. Linnie L. Strickland (wife of William B. Strickland, the insured) on receipt of satisfactory proof of the insured's death, while the policy continued in force, subject to the right of change of beneficiary as thereinafter provided, and to its other provisions, one of which is as follows: "This certificate is issued in consideration of the statements, warranties and agreements in the written application herefor and the payment of the dues above specified, throughout the life of the insured."

The dues or premiums specified in the policy were "Annual $189.50; Semi-annual $97.25; Quarterly $49.75; Monthly, $17.00." The insured had the privilege of paying such dues, monthly, quarterly, semiannually, or annually; if paid monthly, such payments shall be due on the 1st day of each and every calendar month, and must be paid by the 20th of said month; if paid quarterly, semiannually, or annually, such payments shall be due on the 1st day of the first calendar month of such period, and must be paid by the 20th of said calendar month.

It was also provided that no change, modification, or alteration of said policy shall be made unless indorsed thereon by the president, vice president, or secretary of the Prætorians; that the association shall not be bound by any promise or representation made by any person unless in writing by one of said officers, that the certificate or policy, the charter or articles of incorporation, the constitution and laws, the application for the policy, and the medical examination signed by the insured, with all amendments to each thereof, shall constitute the agreement between the association and the insured.

The association's constitution provides that liability on a certificate or policy shall not exist (among other requirements) until the applicant has paid his advance benefit dues and all entrance fees and general fund or other dues as therein provided; also that no agent, deputy, organizer, council, committee, or body whatsoever shall be authorized to waive any such provisions, and especially that no certificate (policy) shall be delivered until all money due thereon has been first paid.

One B. T. Price was in the employ of The Prætorians until about June 10, 1929, under a written contract dated March 26, 1929, by which he was appointed a deputy organizer, with authority to solicit members, organize and build up councils, assist recorders in delivering and collecting dues on certificates, but without authority to incur any obligation or debt for the association or to collect any money whatsoever except as in the contract specified, or to make any contract, representations, or promise on behalf of the association, or to waive any requirement of the constitution. His compensation was (under certain conditions unnecessary to mention here) 80 per cent. of the first twelve monthly payments, on business obtained by him, after deducting a per capita tax of 15 cents per month on each certificate, and was payable on the 1st of the month following that in which payments were received at the home office.

Price procured from Strickland the application for said insurance, and, after the policy was written, obtained it for delivery and collection of the advance premium.

On or about April 20, 1929, Strickland secured from Price physical possession of the policy without making the initial payment of $17, and died on the morning of May 6, 1929, never having paid same.

Defendant in error contends: (1) The delivery of the certificate by Price to Strickland without payment of the premium constituted a waiver of the requirement that such premium be paid as a condition prerequisite to liability, binding on the association; (2) that

Price was clothed with authority to deliver the certificate and collect the premium thereon; therefore his act in granting Strickland credit in the time of payment thereof effectually estops the association from asserting invalidity of the certificate because of nonpayment of the required initial premium.

Motion by the association for an instructed verdict was refused by the trial court; three special issues were submitted to a jury, viz.:

No. 1. "Do you find and believe from a preponderance of the evidence that the agent of the defendant, The Prætorians, delivered the policy sued on to the deceased, W. B. Strickland, with an extension of credit under which the premium on said policy might be paid at a later date?" Answered, "Yes."

No. 2. "Do you find and believe from a preponderance of the evidence that The Prætorians, by its course of conduct in the issuance and handling of the policy sued on, and in permitting same to be handled in the way it was handled, and its method of doing business, gave to B. T. Price, its solicitor, implied authority to deliver the policy sued on with an extension of credit as to the premium thereon, if you have found that any credit was extended?" Answered, "Yes."

No. 3. "Do you find and believe from a preponderance of the evidence that the certificate of insurance in question was delivered to W. B. Strickland without the payment of premium, but with the condition that it would not be in force until the initial premium was paid?" Answered, "No."

The trial court thereupon rendered judgment for plaintiff, for principal and interest to date of judgment, amounting to $5,408, which was affirmed by the Court of Civil Appeals.

Assuming, therefore, from the jury's findings, that Price did unconditionally deliver the policy sued on, to the deceased with an extension of credit, under which the premium might be paid at a later date, the question is, Did he have the authority to so deliver and bind the association?

Article 23 of plaintiff in error's constitution, in force at the time of the issuance of the certificate of insurance, contained the following provisions:

"Section 1. Certificates shall not be issued except upon written application as provided in Art. 18, Section 1.

"Section 2. Liability on a certificate shall not exist against the Order until the applicant has been examined by a regular practicing physician and his application for membership

"(a) Has been received and allowed by the Medical Director, nor until until such member shall

"(b) Have taken the obligation of the Order, nor until he shall

"(c) Have paid his advance benefit dues and all entrance fees and general fund or other dues, as herein provided, nor until he shall

"(d) Have received his certificate while such applicant is in good health and sound mind, all of which shall be prerequisite before any liability shall attach to the order.

"Section 3. No agent, Deputy, Organizer, Council, Committee, or body whatsoever, shall be authorized to waive any part of this article.

"Section 4. No certificate shall be delivered until all money due thereon has been first paid; provided, no certificate shall be delivered to a person who is not at that time in good health. If delivered to a member not in good health it shall create no liability against the Order. Subject to the terms thereof, a certificate shall be in full force, when delivered to a member."

The benefit certificate sued upon contained the following provision:

"This certificate is issued in consideration of the statements, warranties and agreements in the written application herefor and the payment of the dues above specified throughout the life of the insured.

"No change, modification or alteration of this certificate shall be made unless endorsed hereon by the President, Vice President or the Secretary of The Prætorians. The Prætorians shall not be bound by any promise or representation made by any person unless made in writing by one of said officials.

"It is agreed by the insured holding this certificate that the certificate, the charter or Articles of Incorporation, the constitution and laws of The Prætorians, and the application herefor, and the medical examination signed by the applicant, with all amendments to each thereof, shall constitute the agreement between The Prætorians and the Insured."

Plaintiff in error insists that the recitation contained in the application of the member for the certificate of insurance, the stipulations in its constitution and membership certificate, above quoted, when considered in connection with the statute (article 4846, R. C. S. 1925) providing that a fraternal beneficiary association may provide in its constitution that no officer of its subordinate bodies shall have the power to waive the provisions of the laws and contracts of the association, and that such laws are binding upon the members, operates to prevent defendant in error urging waiver or estoppel in this case.

Much has been written upon the subjects, estoppel against, and waiver by, insuring companies in cases like this, and, while the terms are often used in the same sense, there is a distinction. As said in Sovereign Camp, W. O. W., v. Putnam (Tex. Civ. App.) 206 S. W. 970, 973, "estoppel arises where, by

the fault of one party, another has been induced, ignorantly or innocently, to change his position for the worse in such manner that it would operate as a virtual fraud upon him to allow the party by whom he has been misled to assert the right in controversy. * * * Waiver is the voluntary surrender of a right; estoppel is the inhibition to assert it from the mischief that has followed."

▮ In this case, Strickland knew that no right of insurance accrued to him under his contract, evidenced by his application, the constitution and laws of the association, and the policy itself, until he should make the advance premium payment—that was an essential consideration on his part to be performed, without which he could acquire no insurance. He was in the same position before as after he obtained possession of the policy without having made the required payment. His position was not changed for the worse by any act of the association, and therefore neither he nor his beneficiary could claim an estoppel.

That he was not misled at any stage of the negotiation would be a conclusive argument were the question merely one of estoppel. Equitable Life Assurance Soc. v. Ellis, 105 Tex. 538, 147 S. W. 1152, 152 S. W. 625.

▮ It seems to us that the question is one of "waiver," and, if any recovery can be had on the policy, it must be because the association "waived" its right to demand payment before surrendering possession of the policy.

The issue of waiver should be considered only in the light of what the association did. It alone had the power to waive, and its action alone could constitute a waiver. Equitable Life Assurance Soc. v. Ellis, 105 Tex. 538, 147 S. W. 1152, 152 S. W. 625; Sovereign Camp v. Nigh (Tex. Civ. App.) 223 S. W. 291, 292; Sovereign Camp, W. O. W., v. Putnam (Tex. Civ. App.) 206 S. W. 970.

A waiver is the intentional relinquishment of a known right or such conduct as warrants an inference of the relinquishment of such right. Missouri, K. & T. R. Co. v. Hendricks, 49 Tex. Civ. App. 314, 108 S. W. 745, 749.

The burden of proof to show "waiver" was, under the pleadings and undisputed facts, upon defendant in error; she asserted the alleged waiver by the association. Hill v. Allison, 51 Tex. 390; Martin v. Farmers' Nat. Bank (Tex. Civ. App.) 294 S. W. 240; Texas Power & Light Co. v. Bird (Tex. Civ. App.) 165 S. W. 8; 17 Tex. Jur. 329; 27 R. C. L. 910. And such proof must amount to more than a scintilla of evidence, a surmise or suspicion. First State Bank v. Jones, 107 Tex. 623, 183 S. W. 874; Joske v. Irvine, 91 Tex. 574, 44 S. W. 1059; Texas Loan Agency v. Fleming, 92 Tex. 458, 49 S. W. 1039, 44 L. R. A. 279.

The only testimony upon which a "waiver" in this case may be based was that of Mr. Tibbs, which, for the purpose of this consideration of the case, must be taken as true, and that goes only to the extent of establishing the fact that, after reading the policy, Mr. Strickland put it in his pocket and promised Price "a check in a few days," to which the latter replied, "That is all right."

This could not be considered a waiver on the part of the association in the face of its stringent rules to the contrary, of which Strickland must have had notice, not only from the original application, which he signed, but the constitution and rules of the order. Price, neither under the terms of his contract nor the constitution and rules of the association, had the right to so deliver the policy. Such provisions are in pursuance of, and fully authorized by, article 4846, Rev. Stat. 1925, applicable to the Prætorians, as follows: "The Constitution and laws of the society may provide that no subordinate body nor any of its subordinate officers or members shall have the power or authority to waive any provision of the laws and Constitution of the society, and the same shall be binding on the society and each and every member thereof and on all beneficiaries of members."

In this particular case, the deceased had notice on the face of the application that his insurance would not be effective until he made the first payment, and the rules of the association specially provided that "no certificate shall be delivered until all money due thereon has been fully paid." Price's authority did not extend beyond the right to collect the premium as a prerequisite to the delivery of the policy; only the supreme body or its officers acting within the scope of their official duties had the power to bind the association, and then only by indorsement on the certificate. The facts here are entirely different from those in Calhoun v. The Maccabees (Tex. Com. App.) 241 S. W. 101, where the premiums were paid and remitted to and accepted by the supreme body.

We are of opinion that the trial court should have peremptorily instructed a verdict for the association.

We therefore recommend that the judgments of the trial court and of the Court of Civil Appeals be reversed and judgment be here rendered in favor of plaintiff in error.

CURETON, Chief Justice.

The judgment of the District Court and Court of Civil Appeals are both reversed, and judgment rendered for the plaintiff in error, as recommended by the Commission of Appeals.