Aubrey Joyce ESTES, Jr., aka Jay Davis, Appellant,

v.

Marie Marsh Degler McKinney WILSON, Appellee.

No. 2-84-019-CV.

Court of Appeals of Texas, Fort Worth.

Dec. 27, 1984.

Royce Coleman, Denton, for appellant.

Michael E. Robinson, Dallas, for appellee.

Before FENDER, C.J., and ASHWORTH and BURDOCK, JJ.

## OPINION

FENDER, Chief Justice.

The judgment appealed in this case awarded possession, title, reimbursement of taxes, and lost rents to appellee, Marie Marsh Degler McKinney Wilson, the lessor under a lease agreement with option to purchase. Appellant, Aubrey Joyce Estes, Jr., aka Jay Davis, the lessee and plaintiff below, was denied any recovery in his asserted causes of action for declaratory judgment, specific performance of the option to purchase provisions of the agreement, and attorney's fees.

We affirm.

Appellant's first four points of error are directed at the trial court's action in "forfeiting Appellant's interest in" the lease-purchase agreement without giving him the opportunity to cure any default in his performance under the agreement, for forfeiting his interest in the agreement for failure to pay taxes and failure to keep insurance with the same carrier previously used by appellee-lessor, and for forfeiting his interest in the agreement by sub-leasing without consent of appellee. Points of error four, five, six and seven attack the award of lost rents to appellee and denial of "affirmative relief" and attorney's fees to appellant.

On May 9, 1974, appellant (sometimes referred to herein as "Estes") and appellee, (sometimes referred to as "Wilson") executed an instrument on a printed form for lease which contained an option to purchase. This instrument will be called the "lease-purchase agreement." It is copied in relevant part below:

Lessor hereby declares that there is no indebtedness or liens of any kind on said property and that she is the sole owner of said property and further agrees not to incur any debt on said property during the terms of this lease-purchase option. Lessor also declares that there are no taxes of any kind now due on said property.

Lessee agrees carry (sic) the same Insurance on said Property meaning same Company and same Coverage until a Purchase Option has been exercised.

Lessee agrees that if rents are not paid on or before the 15th of each Month beginning the 15th day of May, 1974 this agreement shall become null and void and lessee will have five days to vacate said Property. If this agreement does become null and void there will be no liability each party to the other.

LESSEE is also tendering $4,000.00, receipt of which is hereby acknowledged, for an option to purchase the location for the price of $25,000.00 with all option money and all rent being credited to the purchase. The lease shall be for the term of fifteen (15) years beginning the 15th day of May, A.D. 1974, and ending the 15th day of May, 1989, to be occupied [illegible] and not otherwise, Lessee [illegible] therefor the sum of $200.69 per month as rent; that all rent paid shall be, at any time the option is exercised, credited to principal and interest payments. LESSEE shall pay all taxes and insurance. All Taxes and Insurance shall be prorated from May 15, 1974.

If Purchase Option is excercised (sic) said Note shall bear an 8% rate per annum.

LESSEE shall have the right to sell, transfer or convey this lease purchase option at anytime during the term of this agreement if he so desires, said transfer must meet with Lessor's approval.

According to Wilson, this remarkable instrument was devised so that appellant's name would not appear of record as owner of the property, where it might aggravate the problems which Estes was having with the I.R.S.

In his brief, appellant admits that he "sublet the premises, that a small amount of taxes did not get timely paid and that insurance was always in force but *not* with the same insurance company formerly insuring the Defendant." As to the subletting however, appellant contends that appellee waived her right to complain. The claimed waiver is based upon the fact that on June 24, 1980, she wrote him a letter

stating that he had rendered the contract "Null and Void" by not paying rent on time, subletting the premises and failing to keep the premises in good repair, but that she continued to accept payments until June of 1982.

On May 13, 1981, Wilson filed suit in the district court asking for declaratory judgment and "voiding" of the lease-agreement. That suit was dismissed without prejudice on May 10, 1982, the day set for trial, upon motion of Wilson. On September 7, 1982, Wilson's attorney wrote Estes advising that the lease was terminated due to his failure to pay taxes on the premises and to supply insurance coverage as agreed. The present suit was brought by Estes on October 4, 1982.

In his amended petition, Estes alleged that he was and had been "ready, willing and able to comply with whatever the terms of the 'AGREEMENT' are, whether it be his interpretation or some other interpretation." In this regard he prayed that his option be enforced and that Wilson be required to convey and that he, Estes, be required to give "an appropriate note secured by Deed of Trust." Additionally, he pled a cause of action for damages due to wrongful prosecution. That cause of action went out of the case by directed verdict, from which action of the court, no appeal has been taken.

With regard to appellant's claim of waiver on Wilson's part, the jury found that he sublet the property to tenants without Wilson's consent, and further found that Wilson did not waive her rights to require approval prior to such subletting. In spite of such findings, appellant contends that waiver occurred as a matter of law.

■ It has been established by Texas law that waiver is a question of fact for the trier of fact to determine. *See Andrews v. Powell*, 242 S.W.2d 656; *Marsalis v. Thomas*, 13 Tex.Civ.App. 54, 35 S.W. 795 (Tex. Civ.App.1896, writ ref'd); *Lewis v. Smith*, 198 S.W.2d 598 (Tex.Civ.App.—Fort Worth 1946, writ dism'd); *Carlisle v. MacDonald*, 200 S.W.2d 436 (Tex.Civ.App.—Texarkana 1947), *rev'd on other grounds*, 146 Tex.

206, 206 S.W.2d 224. It has been held that waiver must be clearly proven and that the proof must amount to more than a scintilla of evidence, surmise or suspicion. *Jordan v. City of Beaumont*, 337 S.W.2d 115 (Tex. Civ.App.—Beaumont 1960, writ ref'd n.r. e.); *The Praetorians v. Strickland*, 66 S.W.2d 686 (Tex.Comm'n App.1933, judgment adopted).

■ The evidence established that, despite acceptance of payments that were due, Wilson continued to take steps to evict appellant, thus making it clear that acceptance of any payments was not to be construed as a waiver of her rights. The Texas courts have long held that the accepted definition of waiver is an intentional relinquishment or surrender of a right that is at the time known to the party making it. *The Praetorians v. Strickland, supra; Moore v. Price*, 103 S.W. 234 (Tex.Civ.App. 1907, writ ref'd n.r.e.).

The court stated in *Ferrantello v. Paymaster Feed Mills*, 336 S.W.2d 644 (Tex. Civ.App.—Dallas 1960, writ ref'd n.r.e.): "Intention is a necessary element of waiver as distinguished from estoppel, ..."

■ Wilson testified that at no time did she intend to waive any of her rights in regard to the real property and lease agreement. By appellant's own admission in his pleadings, Wilson continuously complained of the subletting and continuously notified Appellant of her objections. It is an established rule of law that to prove an implied waiver of a legal right, there must be a clear, unequivocal and decisive act of a party showing a purpose or acts which amount to an estoppel on his part. *Corrin v. Slagle*, 300 S.W.2d 657 (Tex.Civ.App.—Fort Worth 1957, writ ref'd n.r.e.).

■ The cases cited by appellant for the proposition that "waiver" occurred as a matter of law are all clearly distinguishable from the case at bar. *Apperson v. Shofner*, 351 S.W.2d 367 (Tex.Civ.App.—Waco 1961, no writ), for example, is a suit between a lessee and his sublessor in which the landlord testified that he orally waived

the consent requirement when the sublessor took the property.

It has been held that a material fact issue is created where a landlord knows of and accepts payments after a sublease has occurred, but it is imminently clear that this is a fact question, which was resolved by the jury in Wilson's favor.

"It is well settled, and appellees agree, that the rights accruing to a lessor under the provisions of Article 5237 may be waived. *Nelson v. Seidel*, (Tex.Civ. App.), 328 S.W.2d 805, (Refused, NRE), and cases cited therein. The question which then presents itself is whether or not appellants have presented sufficient evidence to raise an issue of a material fact. ... In our opinion this raises a fact issue as to whether or not the executors relinquished their right to cancel the lease contracts. This is an issue which should be passed upon by a trier of the facts." *Bradley v. Gray's Estate*, 385 S.W.2d 681 (Tex.Civ.App.—Amarillo 1964, writ ref'd n.r.e.).

Regarding the admitted non-payment of taxes and the failure to keep the premises insured by the same insurance company, there were no special issues submitted to the jury, however the trial court ruled that Wilson recover the sum of $379.11 for taxes which Estes should have paid.

Appellant argues that the trial court could not properly find a forfeiture of the lease because of his failure to pay taxes and to retain the same insurance with the same insurance carrier. He admits that some taxes were not paid and that, although he kept the premises properly insured, it was impossible to retain the same carrier since that company declined to reinsure the premises at the end of the policy term. Appellant testified that Wilson caused the insurer to cancel coverage and Wilson testified that it was appellant's fault for letting the premises become run down and vandalized. It was further claimed that Wilson failed to send tax statements to Estes and that his failure to pay taxes was unwitting. There was no submission of jury issues bearing upon impossibility of performance or fault for noncompliance with such requirements of the lease-purchase agreement.

In any event, appellant claims that such requirements, if breached, were covenants rather than conditions. He cites *Hearne v. Bradshaw*, 158 Tex. 453, 312 S.W.2d 948 (1958), in which it was said "provisions obligating respondents to maintain the property, pay the taxes and insurance, and furnish food and clothing to the grantor were covenants and not conditions. The remedy for their breach is an action for damages, and petitioners were not entitled to recover the estate conveyed to respondents by deed." The *Hearne* case, however, involves a very distinguishable set of circumstances. In *Hearne* the real property, the subject of the suit, had already been transferred by a warranty deed and the court held that damages were available and the interpretation of the "terms" was held against the grantor.

Conditions subsequent are not favored by the courts, and the promise or obligation of the grantee will be construed as a covenant unless an intention to create a conditional estate is clearly and unequivocally revealed by the language of the instrument. *Hearne v. Bradshaw, Id.,* 951.

A lease-purchase agreement creates an entirely different situation.

Option contracts are generally construed against the optionee because they are for the benefit of the optionee. *Sinclair Refining Co. v. Allbritton*, 218 S.W.2d 185 (Tex.1949).

In determining whether a condition in a deed is a condition precedent or a condition subsequent, the general rule that a conveyance should be interpreted so as to give effect to the intention of the parties is applicable. *City of Dallas v. Etheridge*, 253 S.W.2d 640, 642 (Tex. 1952).

■ Here we are faced with a lease with an option to purchase, which clearly makes certain requirements preconditions. The agreement states:

Lessee agrees to carry the same insurance on said Property meaning same company and same coverage until a Purchase Option has been exercised.

The phrase "until a Purchase Option has been exercised" is drafted as a condition precedent. If it is not enforced as a condition precedent, it would be ineffective since "damages" could never properly remedy the violation of the clause.

Although appellant urges that the agreement's provisions were ambiguous, there were no special issues submitted to the jury requesting a finding as to the true meaning of the instrument. It appears that the trial court properly admitted evidence of the circumstances surrounding the making of the agreement, the intent of the parties, their understanding of the agreement and their construction of the provisions for payment under the option clause and other rights provided in the agreement. *Martin v. Davis Constructors, Inc.*, 552 S.W.2d 873, 878 (Tex.Civ.App.—San Antonio 1977, writ ref'd n.r.e.). The ambiguous intent of the parties was a matter that is properly for the jury to resolve. *Trinity Universal Insurance Co. v. Ponsford Brothers*, 423 S.W.2d 571, 575 (Tex.1968); *Corpus Christi National Bank v. Lowry*, 662 S.W.2d 402, 405 (Tex.App.—Corpus Christi 1983, no writ).

By not submitting special issues for the jury's determination appellant left the ambiguousness of the agreement to be resolved by the trial court, and the trial court was not requested to file its statement of facts and conclusions of law. It is well settled that absent findings of fact and conclusions of law, where said findings are necessary to determine on what basis the trial court rendered its judgment, the Court of Appeals is obligated to consider only the evidence most favorable to the issue and will disregard entirely that which is opposed to it or contradictory in nature. *Renfro Drug Co. v. Lewis*, 235 S.W.2d 609 (Tex.1950). The court should imply all necessary fact findings to support the judgment, thereby providing the broadest possible base of support for the judgment on appeal. *Commercial Credit Corporation v. Smith*, 143 Tex. 612, 187 S.W.2d 363, 365 (Tex.1945); *Brown v. Frontier Theatres, Inc.*, 369 S.W.2d 299, 301–302 (Tex.1963).

Applying these rules, we cannot hold the judgment of the trial court terminating appellant's interest in the lease was not supported by tenable implied findings and conclusions. Appellant's points of error one, two and three are overruled.

Appellant's points of error four and five, which are briefed together are here set out:

## POINT OF ERROR FOUR

The trial court erred in divesting plaintiff of possession and his interest in the real property without giving plaintiff the opportunity to cure any default in plaintiff's performance under the "lease-purchase agreement" of May 9, 1974.

## POINT OF ERROR FIVE

The trial court erred in rendering a money judgment against plaintiff for the amount of $2,408.20 in addition to divesting plaintiff of all of his interest in the real property where there was no finding of a deficiency.

Appellant reasons that (1) a holder of a delinquent installment note must present the note and demand payment prior to its acceleration and (2) under a deed of trust, notice must afford an opportunity to cure a claimed default; therefore this Court should also give him the opportunity to pay Wilson "prior to losing all of his interest in his real estate." We are cited to no authority for such proposition nor do we know of any. Accordingly, point of error four is overruled.

Appellant next states that the judgment in the amount of $2,408.20 "is in the nature of a deficiency judgment and generally the Courts of Appeals have held that before an individual will be liable on a deficiency, there must first be some action which conclusively establishes the loss." He claims that there was no evidence of

Wilson's loss "or even the value of the real estate."

The cases cited to us regarding deficiency judgments deal with deficiencies in the usual sense, that is, the amount remaining unpaid on a debt after forced sale of collateral and credit of the proceeds to the original debt. They are not in point. Regarding the claim that there was no evidence of Wilson's loss, the record shows that she was deprived of the use and occupancy of the premises and the agreed monthly rentals during such period was $200.69, which the jury found to be $2,408.28. Appellants' point of error five is overruled.

Appellant's points of error six and seven are here set out:

## POINT OF ERROR SIX

The trial court erred in failing to award plaintiff affirmative relief on his pleadings and prayers for relief.

## ˙ POINT OF ERROR SEVEN

The trial court erred in failing to award plaintiff his attorney's fees.

It is apparent from his brief that by "affirmative relief" appellant means a judgment spelling out the rights of the parties. From his amended petition we quote the following:

## "XII

"Plaintiff furthermore invokes the powers of the trial court to properly adjudicate Plaintiff's and Defendant's rights and privileges in terms of the Declaratory Judgments Act of the State of Texas and in respect thereto, Plaintiff is and has been always ready, willing and able to comply with whatever the terms of the 'AGREEMENT' are, whether it be his interpretation or some other interpretation. Plaintiff would show that it has at all times been futile to tender money to Defendant as her attorneys have formally given written notice that no further payments or monies will be accepted."

The following is the pertinent parts of appellant's prayer as set out in his petition:

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that after trial to a jury and any fact issues resolved that Plaintiff have the following relief:

(1) That Plaintiff Estes' option be enforced with Defendant Wilson being ordered to sign and deliver a General Warranty Deed and if appropriate, an appropriate note secured by Deed of Trust be given by Plaintiff, and/or;

(2) That specific performance of the "AGREEMENT" be granted;

(3) That the Court invoke its equitable powers pursuant to the Declaratory Judgments Act and decree whatever relief may be appropriate and equitable;
. . .

In its judgment, the trial court disposed of all of appellant's allegations and prayers for relief by its judgment that "Plaintiff/Counter Defendant take nothing by his action herein."

This Court was faced with a similar situation in *Downe v. Askey*, 529 S.W.2d 121 (Tex.Civ.App.—Fort Worth 1975, no writ). In that case, in a bench trial, the makers of a note brought an action seeking declaration of their rights under a prepayment clause. The trial court did not write a judgment which declared the parties' rights, as such, but after entering its findings of fact and conclusions of law, rendered a judgment that the plaintiffs take nothing by their suit. The effect of such judgment was thus to deny the plaintiff the particular construction that he asked be given to the provisions of the note.

In *Downe* we wrote:

"We are convinced that it would have been better practice if the trial court had drawn the judgment in the form of a declaratory judgment undertaking to declare the rights of the parties with reference to prepayment of the principal of the note. The parties would then have had the judgment as a guide to go by in determining their rights.

"We have found no Texas case dealing with the question of how the parties are

affected when the trial court renders a take nothing judgment in a suit where the relief sought is declaratory relief. We have, however, found out of state cases on the subject.

"The law appears to be that since no technical form is prescribed for the declaration of rights in a declaratory judgment action, the form of a judgment rendered in such an action is sufficient if the rights of the parties that are sought in the suit to be ascertained can be ascertained from the judgment rendered when considered in view of the controversy involved along with the findings of fact and conclusions of law filed in the case by the trial court." (Citations omitted)

We then held:

"The decree rendered by the trial court in this case, when considered in view of the controversy involved, along with the trial court's findings of fact and conclusions of law, fully declare the rights of the parties on the issues involved."

We have found no authority on this point since our decision in *Downe*. Accordingly we hold that the take nothing judgment rendered in this case fully determined that appellant had no enforceable rights to be declared. Point of error six is overruled.

Point of error seven is also overruled inasmuch as we are neither cited to any authority nor do we know of any which requires recovery of attorney fees by the party losing the litigation.

We now address appellee's sole cross point in which it is urged that the trial court should have awarded her reasonable attorney's fees for which she pled, proved and requested judgment under the provisions of TEX.REV.CIV.STAT.ANN. art 2226, (Vernon Supp.1984), which is here copied in pertinent parts:

"Any person, corporation, partnership, or other legal entity having a valid claim against a person or corporation for services rendered, labor done, material furnished, overcharges on freight or express, lost or damaged freight or express, or stock killed or injured, or suits founded upon a sworn account or ac-counts, or suits founded on oral or written contracts, may present the same to such persons or corporation or to any duly authorized agent thereof; and if, at the expiration of 30 days thereafter, payment for the just amount owing has not been tendered, the claimant may, if represented by an attorney, also recover, in addition to his claim and costs, a reasonable amount as attorney's fees.... This Act shall be liberally construed to promote its underlying purposes."

Appellee's claim is, that even though the language of the statute in part seems to be permissive only, its main thrust is mandatory. We believe appellee is correct in such assertion, for, in the case she cites, the Austin Court wrote:

"Our view is that art. 2226 authorizes the party to seek reasonable attorneys fees in the proper case, and if the party makes his proof, then this court *shall* enter judgment for attorney's fees." *Davidson v. Suber*, 553 S.W.2d 430 (Tex. Civ.App.—Austin 1977, no writ). *See also Jones v. Kelley*, 614 S.W.2d 95 (Tex.1981). Accordingly we hold that appellee is entitled to her attorney's fees, and we sustain her cross point.

The judgment of the trial court is reformed to provide for attorney's fees in the amount found by the jury, and as reformed, is affirmed.