W. G. CORRIN, Jr., Appellant,

v.

Travis M. SLAGLE et ux., Appellees.

No. 15793.

Court of Civil Appeals of Texas.

Fort Worth.

March 15, 1957.

Rehearing Denied April 12, 1957.

Brewster, Pannell, Leeton & Dean and Beale Dean, Fort Worth, for appellant.

Hudson, Keltner & Sarsgard, and Joe Bruce Cunningham, Fort Worth, for appellees.

BOYD, Justice.

Appellees Travis M. Slagle and wife, Carolyn Slagle, recovered judgment against appellant W. G. Corrin, Jr., for rescission of a contract of sale of a house and lot by appellant to appellees, and a judgment for $24,050.28, and appellees were ordered to convey the property to appellant upon his paying the money judgment. The money judgment covered the purchase price of $20,500, which had been paid in cash, interest, taxes, insurance, and a penalty which

would have to be paid to secure release of a lien appellees had placed upon the property.

Appellees alleged that appellant induced them to enter into the contract to purchase the property by representing that the house had been properly constructed; that the foundation was sufficient to properly support the house; that he would "stand behind" any defects in the construction of the house; and that such representations were false. Appellees offered to pay a reasonable rental for the use of the property. Appellant pleaded that the house and its foundation had been properly constructed; that cracks and other defects appearing in the building were caused by weather extremes and were not due to improper construction; that the representations alleged were not representations of fact but were simply expressions of opinion and were not actionable; that appellees undertook an independent investigation of the construction of the house before they agreed to buy it, and were therefore charged with all knowledge which could have been obtained from a proper investigation; that a proper investigation would have disclosed any improper methods used in the construction of the house; and that appellees had waived the right to rescind, and were estopped to claim a rescission.

The jury found that: appellant made the representations as alleged; the representations were material inducements to appellees to sign the contract of sale and purchase; the house was not properly constructed; the foundation was insufficient to support the building; improvements to the house made by appellees enhanced its value by $1,750; had the house been properly constructed, the value of the property at the time it was delivered to appellees would have been $20,500; its value at the time of delivery was $15,000; it would cost $5,500 in repairs to put the house in the condition it would have been in had it been properly constructed; and the reasonable rental value of the house was $140 per month.

Appellant challenges the judgment by several points of error. They are, in substance, that: appellees waived, and are estopped to assert, any right of rescission; they sought and were granted only a partial rescission; they did not demand rescission in a reasonable time; there were errors in submitting some issues and instructions, and in refusing others; and that it was error to render judgment for interest which appellees had paid on a loan, the proceeds of which were paid to appellant on the purchase price.

Appellant is a builder of considerable experience, and he built the house in question. It is not denied that good materials were used in the construction of the house.

Appellant does not question the sufficiency of the evidence to support the findings of the jury that the house was not properly constructed and that the foundation was insufficient to support the house; but he contends that the defenses of waiver and estoppel were established as a matter of law, under the undisputed testimony. While the question is not free from difficulty, we do not think that the evidence establishes either waiver or estoppel as a matter of law.

At the time the deed was delivered to appellees, appellant delivered to them a letter stating, "'This house was built by me, and I represent same to be properly built and will stand behind same. It is understood that you are paying for the house in reliance on my promises.'"

The deed was delivered on August 11, 1953, and appellees moved into the house within a few days thereafter. Within about three months after moving in, appellees noticed cracks in the sheetrock on the inside and in the brickwork on the outside of the house. These defects were called to appellant's attention and he filled the cracks in the brick with mortar, and filled the cracks in the sheetrock, and retaped and painted them. About January, 1954, the cracks reopened and other cracks appeared, and appellant again refilled them.

About two months later, these cracks reopened and began to grow larger, and mice and insects came into the house through openings which were not properly sealed. Appellant undertook to remedy this situation.

On July 27, 1954, appellee Travis M. Slagle wrote appellant that " 'you assured both of us verbally and by letter that you would stand responsible for, and correct at your expense, any defects due to faulty construction of the house. * * * After living in the house a very short while we detected many defects due to faulty construction which have not been corrected but have been reported to you. Some of the many defects which now exist are * * * (a) The West side of the house has a defective foundation which is causing part of one room to separate from the rest of the house and is apparent in cracks in the walls, cracks in the foundation, the separation of the window frame from the brick walls and the inability to secure one of the windows. (b) Two closets in the house are not sealed and insects can enter the house unobstructed. (c) Behind a built-in cabinet in the kitchen is a crack causing an opening to underneath the house through which insects and rodents enter the house unobstructed. (d) There are large open spaces around the plumbing at places it comes through the floor.' " After mentioning other matters of complaint, the letter went on to say, " 'These are not the only defects which we have noted, but they will give you an outline of the troubles we are encountering. I hereby notify you that if you do not undertake to correct these defects promptly and within the next week or two I will have no alternative but to consider that you do not intend to abide by your agreements and have breached same. This is not an unreasonable request since we have previously asked you on other occasions to attend to these matters and we have gotten no satisfaction.' "

Appellant conferred with appellees and undertook to remedy the conditions complained about. Appellant thought that the foundation could be repaired by putting two more piers under the room which was separating from the rest of the house, but Slagle insisted that that would not be enough, and appellant thereupon put five additional piers under that portion of the house. After this repair work was done, appellant asked Slagle to give him a written release of any further responsibility, but Slagle refused because, he testified, he was not sure that the defects would not reappear and get worse. He told appellant that he was still looking to him to correct the defects.

In December, 1954, or January, 1955, numerous cracks began to appear in the foundation beam, and in the exterior brickwork and in the sheetrock inside the house. Appellees called appellant's attention to the situation, but he did no more repair work. On July 26, 1955, Slagle wrote appellant that " 'Under the terms of our original agreement the correction of these matters remain your responsibility. Unless you take steps to correct them immediately, I will be forced into litigation to protect my rights.' " Appellees filed this suit on August 10, 1955.

As to whether there has been a waiver is ordinarily a question of fact. 43–B Tex.Jur., p. 491, sec. 14; 56 Am.Jur., p. 125, sec. 23. To establish implied waiver, there must be a clear, unequivocal, and decisive act showing such a purpose or acts amounting to an estoppel. Miller v. Deahl, Tex.Civ.App., 239 S.W. 679, writ refused; Bounds v. Home Mut. Life & Accident Ass'n No. 1, Tex.Civ.App., 290 S.W. 552.

Appellant relies on such cases as Rosenbaum v. Texas Bldg. & Mortg. Co., 140 Tex. 325, 167 S.W.2d 506; Winters v. Coward, Tex.Civ.App., 174 S.W. 940; American Land Co. of Texas v. Dale, Tex. Civ.App., 55 S.W.2d 229; Powell v. Rockow, Tex.Com.App., 92 S.W.2d 437; Houston Motor Car Co. v. Brashear, Tex. Civ.App., 158 S.W. 233; J. B. Colt Co. v. Head, Tex.Com.App., 292 S.W. 198; and

Hatch v. National Cash Register Corporation, Tex.Civ.App., 105 S.W.2d 1114. We think those cases are authority for the proposition that where a buyer continues to use property after discovery of fraud inducing the purchase, and enjoys the benefits of the contract, he waives his right of rescission. An analysis of the cases cited will not be attempted here; but we observe that the parties who were held to have waived the right of rescission were shown to have knowledge of the fraud and that there were "clear, unequivocal, and decisive acts" showing an intention to waive, or acts which amounted to an estoppel.

It is true that appellees found evidence of defects in the house long before rescission was attemped; but appellant assured them that the defects were not serious, that the settling of the house was normal and would eventually take care of itself, and that there was nothing to worry about. After appellant received the letter of July 27, 1954, he told appellees that while the house had dropped more than he expected, he still did not consider it to be serious. Slagle testified that when appellant would tell him that the defects were not serious and that he would take care of them, he believed appellant. On cross-examination, when Slagle was asked whether in July of 1954 he suspected that some improper construction methods had been used, he answered, "I wasn't sure what was causing it." He said that when he wrote the letter of July 26, 1955, he "knew there were defects and to me they must have been from improper construction." About the time the suit was filed, appellees had the building examined by a building contractor.

Appellant had been building houses in Fort Worth constantly since 1949. He had built eleven or twelve houses in the section where the house in question is located. He testified that it might or might not take an expert to know whether a foundation was properly constructed, but "An expert would help."

We do not think that appellees lost the right of rescission by calling upon appellant to remedy the defects as they were discovered. Loughry v. Cook, Tex.Civ. App., 263 S.W. 333. In Kuykendall v. Schell, Tex.Civ.App., 224 S.W. 298, 305, it was said: "We are further of opinion that the delay on the part of plaintiff and his assignors to assert their right of rescission did not deprive them of such right. Their repeated demands for deeds, their continuing to make payments after they had paid the one-fourth of the purchase money and the deeds had not been executed, show they did not desire a rescission if they could obtain title to the land. The obligation of appellant to deliver the deeds and abstracts was a continuing obligation, and when the purchasers, after repeated demands, failed to obtain their deeds, they had the right to then for the first time demand the return of purchase money paid by them." In 43–A Tex.Jur., p. 643, sec. 615, the rule is said to be, "However, the right to rescind for nonperformance of the contract is not affected by mere delay where the purchaser has repeatedly demanded that the vendor perform."

Nor do we think the knowledge appellees had obtained about the construction of the house, and their subsequent living in it and paying the taxes and insurance, constitute clear, unequivocal, and decisive acts of waiver. As was said in Deaton v. Rush, 113 Tex. 176, 252 S.W. 1025, 1030: "To hold a defrauded purchaser to the necessity of bringing suit upon the first discovery of a fraudulent act, regardless of whether or not such discovery revealed the material facts of the fraud, would place him in a perilous position in every case where the seller has acted fraudulently in any degree. It would put the purchaser to a nice calculation as to the exact amount of injury from the fraud that would entitle him to a rescission, for, if he should make the mistake of determining that the revelation of such part of the fraud as has come to his knowledge at a given time is insufficient to justify him in rescinding and to entitle him to a rescission, and, consequently, that he should not bring suit then, but afterwards discovers grossly

fraudulent acts for which he brings suit for rescission, and in such suit the court determines that the fraud which the purchaser thought insufficient to sustain a rescission is sufficient therefor, he is cut off and barred because he did not bring the suit on such first discovery. Such a rule would encourage litigation and compel the purchaser to bring his suit on discovery of first sufficient evidence of fraud through fear that there might be gross fraud yet undiscovered by him, though he might be willing and even glad to forego a suit and to condone the fraud then discovered but for such fear, even when no additional or other fraud had been practiced by the purchaser. It would, of necessity, tend to convert trustful, confident, and peaceable citizens into distrustful, suspicious, and litigious characters, and would transmute the practice of the best qualities of mankind into legal penalties."

We overrule appellant's point that the judgment accomplishes only a partial rescission. His contention is that the letter given by appellant to appellees when the deed was delivered is left undisturbed and in full force and effect, and that appellees might still claim benefits under the letter. The contract of sale being rescinded, we think, perforce, all engagements and inducements are ended.

The issues requested by appellant and refused by the court appear to be evidentiary and not ultimate, and error is not shown in their refusal.

We have considered all of appellant's points, but do not think error is reflected requiring reversal and rendition or a remand of the judgment.

We sustain appellant's point that the judgment is erroneous in that it would require him to pay interest twice on a portion of the amount involved. It appears that appellees recovered judgment for interest on the entire amount paid for the property, in addition to interest they paid on a loan secured by them for $13,500, the proceeds of which they paid to appellant as part of the purchase price. They were therefore awarded recovery for interest on $34,000, when they paid only $20,500 for the property. The judgment is reformed by deducting $1,856.25, which represents interest paid by appellees on the loan, so that the money recovery will be $22,194.03, with interest at six per cent from May 4, 1956, the date of the judgment. Costs of the appeal are adjudged one-half against appellant and one-half against appellees.

The judgment is reformed, and, as reformed, it is affirmed.