**MONTGOMERY WARD & COMPANY,**
**Inc., Plaintiff,**

v.

**ROBERT CAGLE BUILDING COM-**
**PANY et al., Defendants.**

Civ. A. Nos. 63–H–622, 63–H–638.

United States District Court
S. D. Texas,
Houston Division.

March 15, 1967.

Baker, Botts, Shepherd & Coates, Houston, Tex., Ralph S. Carrigan, Houston, Tex., for plaintiff.

Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex., Kraft W. Eidman and M. W. Parse, Jr., Houston, Tex., for defendants.

INGRAHAM, District Judge.

MEMORANDUM:

The defendants, Robert E. Cagle, Harry W. Cagle and the Robert Cagle Building Company (hereinafter Cagle), have moved for partial summary judgment against the plaintiff, Montgomery Ward & Company, Inc. (hereinafter Ward). The motion will be denied.

In 1962 Cagle embarked upon a $1,000,000 apartment building project. It was Cagle's purpose to sell the complex to investors when completed. On September 19, 1962, Ward made eight contracts with Cagle to perform approximately one-third of the work on the apartments. The contracts called for Ward to complete its work by April 19, 1963. Ward did not substantially complete its work until July, 1963. Ward seeks the full amount due it under the contracts; Cagle claims the right to recoup the damages caused it by Ward's delay from the amount due Ward under the contracts. Cagle contends in its present motion that it is entitled to recoup damages as a matter of law and that the only question for trial is the amount of damages caused by Ward's delay.[1]

The contracts between Cagle and Ward incorporated by reference a set of provisions referred to as the Standard American Institute of Architects Form of General Conditions. Article 18 (hereinafter "A.I.A. Article 18") of these conditions provided that any delays encountered and requests for time extensions

---

1. Cagle contends throughout its pleadings that it is entitled "to offset" damages caused by Ward's delay. A "set-off" is a counterdemand which a defendant holds against a plaintiff arising out of a transaction extrinsic of the plaintiff's cause of action. A counterdemand arising out of the same transaction is a "recoupment". This court construes Cagle's counterdemand as one for "recoupment".

must be communicated by Ward to the architect in writing. It is undisputed that Ward never gave written or oral notice of any delays nor sought time extensions from the architect or Cagle. Because of Ward's failure to comply with A.I.A. Article 18, Cagle contends that as a matter of law Ward can now make no defense of its delay, regardless of what other facts may be present.

Ward has advanced three arguments to defeat Cagle's motion:

1. That Texas courts have not yet enforced a notice provision such as the one contained in A.I.A. Article 18.

2. That Cagle waived the notice provision of A.I.A. Article 18 by failing to operate the project in the manner contemplated by the contract, particularly by failing to use a supervising architect on the job.

3. That Cagle waived the completion date by making contracts with other subcontractors calling for later completion dates.

## I.

■ Jurisdiction in this case is based on diversity of citizenship. Texas law controls all substantive issues. Erie Ry. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Ward resists Cagle's motion by claiming that Texas courts have not enforced notice clauses such as A.I.A. Article 18.

■ If Ward seeks to show that Texas courts will not enforce notice provisions, then it overstates its position. That Texas courts will enforce such provisions is made clear in a quotation cited in Ward's brief:

"We do not doubt that the provisions in the contract requiring Contractors to give written notice of claims for extras and time extensions are valid." Housing Authority of City of Dallas v. Hubbell, 325 S.W.2d 880, 900 (Tex. Civ.App.1959), err. ref. n. r. e.

Ward argues that this language is formal and without significance in that every Texas decision has sought and found some basis on which to avoid enforcing such a provision. Ward sup-

poses this to be because such provisions are unjust; Cagle argues that they are obviously beneficial to both parties.

This court is not concerned with the wisdom or justice of the provisions contracted to by private parties such as Cagle and Ward, nor have the Texas courts expressed any such concern. No Texas court has indicated that it was looking for some basis to avoid enforcement of a notice provision. Lacking such a pronouncement, this court will not embark upon a search for some basis to avoid enforcing a notice provision. If Ward wishes to avoid "the imposition of such unjust notice provisions", then it should not contract to them.

## II.

While this court believes the notice provision of the contract capable of being valid and enforceable, it is open to Ward to establish that Cagle waived the provision or the completion date. Cagle first asserts that as a matter of procedure Ward cannot raise these grounds at this stage in the proceedings. This court will grant Ward's motion for leave to file additional pleadings raising these grounds and order the pleadings filed.

Cagle's objection is that Rule 8(c), F.R.Civ.P., requires that waiver be specifically pleaded as an affirmative defense. Because Ward did not raise waiver in the initial pleadings in 1963, Cagle argues that the defense of waiver has been waived under Rule 12(h), F.R.C.P. Cagle further points to an interrogatory it served on Ward in May 1964. It inquired as to what affirmative defenses Ward might rely upon. Ward's answer did not mention waiver.

The principal defect with Cagle's objection is that Ward is the plaintiff in this suit. On November 21, 1963, Cagle sued Ward in a Texas court. On November 27, 1963, Ward sued Cagle in this court. Ward removed the first action to this court where the two actions were consolidated. The consolidated action bears the style and number of Ward's suit and retained Ward as plain-

**472**

tiff with Cagle's express approval. Cagle's claim for recoupment is a part of its defense; Ward's claim of waiver is in answer to that defense. Rules 8(c) and 12(h) have no application.

While this court does not deem further pleading necessary, it will exercise its discretion to permit Ward to file its "Answer to Third Defense of Robert Cagle Building Company". If Cagle's objections are valid, this further pleading cures any defects.

Rule 15(a), F.R.C.P., provides that:

"* * * a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."

The Supreme Court has explained the provisions as follows:

"Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded. See generally, 3 Moore, Federal Practice (2d ed. 1948), ¶¶ 15.08, 15.10. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L. Ed.2d 222 (1962).

Cagle's claim of prejudice is that the other subcontractors with whom it agreed to later completion dates are no longer available to testify. However, Ward could not have pleaded Cagle's other contracts in 1963, or raised them in its answers to interrogatories in 1964, because it did not know of them at those dates. Ward later learned of them through discovery methods. Cagle cannot claim surprise, for it has been in sole possession of the information from this lawsuit's inception. That Ward did not also know is not due to lack of diligence, bad faith, or dilatory motive.

Ward has known from the beginning that Cagle had no supervising architect on the job, but injecting this issue at this point will not cause prejudice and does not result from the factors mentioned in the Foman case.

Ward's two waiver arguments are properly before the court.

### III.

Article 18 of the A.I.A. form contract provides as follows:

"If the Contractor be delayed at any time in the progress of the work by any act or neglect of the Owner or the Architect, or of any employee of either, or by any separate Contractor employed by the Owner, or by changes ordered in the work, or by strikes, lockouts, fire, unusual delay in transportation, unavoidable casualties or any causes beyond the Contractor's control, or by delay authorized by the Architect pending arbitration, or by any cause which the Architect shall decide to justify the delay, then the time of completion shall be extended for such reasonable time as the Architect may decide.

*"No such extension shall be made for delay occurring more than seven days before claim therefor is made in writing to the Architect.* In the case of a continuing cause of delay, only one claim is necessary." (Emphasis supplied.)

Article 18 of the main contract between the parties (not the A.I.A. form contract incorporated by reference) provides for a supervising architect:

"The architect shall have general supervision of the work. He has authority to stop the work if necessary to insure its proper execution. He shall certify to the owner when payments under the contract are due and the amounts to be paid. He shall make

decisions on all claims of the owner or contractor. All his decisions are subject to arbitration."

Ward alleges that there was no supervising architect on the job. Cagle argues it makes no difference, for an architect designed the project, his name was known to Ward, and A.I.A. Article 18 requires that he be given notice of delays. Ward claims that Cagle's failure to use a supervising architect waived all provisions of the main contract and the A.I.A. form contract in which a supervising architect was used.

■ This court believes that if Cagle failed to use a supervising architect, it may have waived other provisions of the contract, and in each instance it is a question of fact for the jury to determine whether there was a waiver. For example, Article 3 of the main contract states:

"Immediately after being awarded the contract the contractor shall prepare an estimated progress schedule and submit same for architect's approval."

Ward never submitted such a schedule. Ward knew the designing architect's name and could have complied with Article 3, yet this court would not hold that the provision was in force as a matter of law. A jury could find that the "architect" mentioned was a supervising architect, not one who no longer was involved in the project, that Cagle failed to use a supervising architect as provided by Article 18, and that these facts amounted to a waiver of the responsibility imposed by Article 3. The same is true of every other provision reasonably involving the role of a supervising architect, including A.I.A. Article 18.

## IV.

The contracts between Cagle and Ward were made on September 19, 1962, and called for completion by April 19, 1963. On October 8, 1962, Cagle contracted for concrete work to be completed by May 8, 1963. On October 9, 1962, Cagle contracted for masonry work to be completed by May 9, 1963. On December 11, 1962, Cagle contracted for insulation to be completed by July 11, 1963. On December 12, 1962, Cagle contracted for cabinets and plastic tops to be completed by July 12, 1963. Ward alleges that each of these other contracts with other subcontractors involved work so intimately connecetd with Ward's work that one could not be completed without the other. Ward claims that Cagle waived the April 19, 1963, completion date by entering these contracts and extended it to July 11, 1963, a date by which Ward completed its work.

Cagle counters that as a matter of Texas law, Ward's allegations do not raise waiver as a fact issue for a jury. Cagle first claims that waiver must induce reliance by the other party, or be supported by some other consideration, and, secondly, that waiver must be intended by one party and so understood by the other. Cagle's first position finds some support in Texas law,[2] but is inconsistent with the generally accepted meaning of the term and the better Texas authority.[3]

The general legal use of the term "waiver" is discussed in Corbin on Contracts, 705–22 (1 Vol. Ed.1952):

"Sec. 752. Waiver and Estoppel Compared

" * * * in order (for a 'waiver') to be legally effective, it is not necessary that the purchaser shall have

---

2. See T. G. Shaw Oil Corporation v. Parker, 61 S.W.2d 587 (Tex.Civ.App. 1933), no writ; Weeks v. First State Bank of De Kalb, 207 S.W. 973 (Tex.Civ. App.1918), no writ; Denton v. Ware, 228 S.W.2d 867 (Tex.Civ.App.1949), reh. den.

3. See Equitable Life Assur. Soc. of United States v. Ellis, 105 Tex. 526, 147 S.W.

1152, 152 S.W. 625 (1912); Dockery v. Hanan, 54 S.W.2d 1017 (Tex.Civ.App. 1932), err. ref.; Reserve Life Ins. Co. v. Martin, 312 S.W.2d 321 (Tex.Civ.App. 1958), reh. den., err. ref. n. r. e.; Sovereign Camp, W.O.W. v. Putnam, 206 S.W. 970 (Tex.Civ.App.1918), err. ref.

given any consideration for it or shall have changed his position in reliance upon it. \* \* \*

"By the usage thus explained, it appears that 'waiver' consists of the voluntary action of the obligor alone. \* \* \* To create estoppel \* \* \* action by both parties is required. \* \* \*

"Sec. 753. Waiver of a Condition may be Effective Without a Consideration

" \* \* \* "

Texas Jurisprudence 2d states Texas law to be consistent with the general legal usage of "waiver":

"But the better view is that waiver is essentially unilateral in its character, resulting as a legal consequence from some act or conduct of the party against whom it operates, and that no act of the party in whose favor it is made is necessary to complete it. According to this view waiver need not be founded on a new agreement, nor be supported by a consideration, nor is it essential that waiver be based on an estoppel." 60 Tex.Jur.2d 190.

■■ Although "waiver" does not require reliance or consideration, it must be intended by one party and so understood by the other. 60 Tex.Jur.2d 189. That Ward did not know of these other contracts does not preclude a jury finding of waiver; Ward does claim to have understood the alleged effect of the contracts, that Cagle was delaying the project.[4]

■ The striking thing about the allegations before this court is the suspicion they raise that the parties entered a contract with which they may not even have been familiar or at least under which they had no intention of conducting their affairs. To what degree one party or the other can operate outside the contract without waiving its

right to demand compliance by the other of related provisions is a question for a jury.

"Such a (notice) provision as this is frequently disregarded by the parties in the course of performance. The requirement of notice can be eliminated by waiver or estoppel. An express waiver is so operative, even though it is oral and without consideration. \* \* \* *A like effect is produced by conduct that causes the contractor to omit the notice in the reasonable belief that it is not necessary.*" (Emphasis supplied.) Corbin, supra, at 716.

Cagle's motion for summary judgment will be denied. The clerk will notify counsel to draft and submit an appropriate order.

---

4. In 1964, Ward still did not know of the other contracts and made the following answer to an interrogatory:

"For reasons known to Robert Cagle Building Company and unknown to

Montgomery Ward, the entire construction project operated at all times behind schedule."