**TEXANA OIL COMPANY, Appellant,**

v.

**Roger L. STEPHENSON, Appellee.**

**No. 6407.**

Court of Civil Appeals of Texas,
El Paso.

March 12, 1975.

Rehearing Denied April 16, 1975.

Lynch, Chappell, Allday & Aldridge, Randall Lundy, D. Bruce Pope, Midland, for appellant.

Vann Culp, Jimmie D. Oglesby, Midland, for appellee.

## OPINION

WARD, Justice.

This is a summary judgment case which was granted in favor of the plaintiff. The plaintiff, Roger L. Stephenson, sued Texana Oil Company in Count 1 on a promissory note allegedly given by the defendant as payment of the balance owed on the purchase of the assignment of a farmout agreement and in Count 2 on a contractual basis of the balance due to the plaintiff on the assignment and without reliance upon the promissory note. The trial Court granted the plaintiff a summary judgment in the principal amount of $19,500.00 without indicating which of the plaintiff's theories it accepted. We reverse and remand.

The plaintiff's motion for summary judgment was based upon both the promissory note executed by the defendant and upon the contractual obligation arising from the assignment to the defendant of the farmout. As pointed out, the final judgment was silent as to which ground was relied upon by the trial Court. To avoid an affirmance upon any possible ground of waiver, the defendant's points upon appeal properly attack both grounds upon which the trial Court might have acted. Malooly Brothers, Inc. v. Napier, 461 S.W.2d 119 (Tex.1970).

The established facts are that the plaintiff owned a farmout agreement from Midwest Oil Corporation, which was dated August 24, 1971. The Midwest farmout provided that on or before October 15, 1971, a test well be commenced on the subject acreage and thereafter drilled with due diligence to 17,000 feet. It provided that the only penalty for failure to drill was the loss of any right to the assignment of the outstanding oil and gas lease held by Midwest. In September, 1971, the plaintiff assigned the Midwest farmout to the defendant, Texana Oil Company, which in turn agreed to pay the plaintiff the sum of $50,000.00, payable in two installments of $25,000.00 each, with the first installment due September 17, 1971, and the second installment due on or before January 5, 1972. This assignment also provided that the defendant Texana should be under no duty to drill the test well called for in the farmout but if drilled then the lease minus certain overriding royalties would be assigned to the defendant. At this time, the plaintiff had secured from Midwest an additional agreement extending the time to commence the test well to December 15, 1971. The first installment of $25,000.00, as provided for in the assignment of the farmout, was paid by the defendant to the plaintiff on September 17, 1971. The defendant then requested the plaintiff to attempt to extend the life of the farmout once more and the plaintiff was able to secure a 45-day extension which provided that drilling operations on the first test well could be commenced on or before February 1, 1972. The January 5, 1972, installment of $25,000.00 was not paid by the defendant to the plaintiff. On January 12, 1972, the plaintiff secured from Midwest Oil Company a new extension whereby the drilling operations on the first test well under the farmout could be commenced on or before March 1, 1972.

On January 14, 1972, the plaintiff wrote to the defendant, Texana Oil Company, a letter, the terms of which control the defendant's appeal. In the letter, the plaintiff, after noting the non-payment of the second installment of $25,000.00, stated: "Therefore, I am formally advising you that our agreement is null and void and of no further force and effect, as you are aware of our past conversations, inasmuch as you have not performed under the conditions and obligations" of our letter agreements. The letter then provided that in the event the defendant is able to deliver the said second installment prior to the time that the plaintiff is able to sell the farmout agreement to someone else "then we again 'have a deal' on this property." On January 16, 1972, this letter was amended by Mr. Stephenson and the de-

fendant to the extent that the parties agreed that the second installment of $25,000.00 might be made on or before January 21, 1972.

The $25,000.00 installment was never paid but on January 24, 1972, $5,500.00 was paid by the defendant to the plaintiff. A dispute exists between the parties as to the purpose of this payment. The summary judgment affidavit offered by the plaintiff is to the effect that he "understood" this $5,500.00 was a partial payment on the $25,000.00 installment. The defendant's version is that this $5,500.00 was not a payment on the installment but was an advance made in an attempt to keep the "transaction" alive but the plaintiff would "not reestablish and/or reinstitute the deal"; that after the letter from the plaintiff declaring the agreement null and void, the agreement was never reinstated; and that the defendant unsuccessfully attempted to revive the farmout deal with Midwest Oil by starting a well and setting surface casing from March 1 through March 17, 1972, when all efforts to drill a well were abandoned.

■ The plaintiff's position, as maintained by his pleadings in Count 2 and by his summary judgment proof, is that the $25,000.00 installment was never released; that the defendant paid $5,500.00 thereon on January 24, 1972; and that a balance of $19,500.00 remains owing on this contractual obligation. By its third point on appeal, the defendant insists that a fact issue exists as to defensive issues on waiver, excuse and release because of the plaintiff's letter of January 14, 1972. We hold that at least a fact issue exists under the present state of the record as to the defense of waiver. Waiver is an intentional relinquishment of a known right or intentional conduct inconsistent with claiming it. It is essentially unilateral in its character; it results as a legal consequence from some act or conduct of the party against whom it operates; and no act of the party in whose favor it is made is necessary to complete it. It need not be founded upon a new

consideration, nor is it essential that it be based upon an estoppel. Massachusetts Bonding and Insurance Co. v. Orkin Exterminating Company, 416 S.W.2d 396, 401 (Tex.1967); 60 Tex.Jur.2d Waiver § 1, et seq.

■ The summary judgment proof is to the effect that at the time the January 14, 1972, letter was written by the plaintiff that the defendant then owed the balance of $25,000.00 on the assignment, while the defendant at the same time had the right to exercise its option to enter the lease and commence drilling, which option right would not expire until February 1st. The letter in no uncertain terms declared the agreement "null and void and of no further force and effect." At least a fact issue exists that the known right of the plaintiff to collect the $25,000.00 was cancelled just as well as the option in the defendant's favor to drill. The extension until January 21st modified the January 14th letter only to that extent when again the "null and void" features of the letter were effected.

■ The plaintiff counters that any claim for relief based upon the letter is valueless because any claim of discharge would be unsupported by any consideration; that the extension secured by the plaintiff of the farmout to February 1st and the subsequent one to March 1st were not called for under any agreement with the defendant; and that the right to the second $25,000.00 payment was unqualified after September, 1971, and matured on January 5, 1972. The better view is said to be contrary to the plaintiff's argument and consideration is unnecessary. Waiver is essentially unilateral in character and consideration is not required. Massachusetts Bonding and Insurance Co. v. Orkin Exterminating Company, supra; Montgomery Ward & Company v. Robert Cagle Building Company, 265 F.Supp. 469 (S.D. Tex.1967); 60 Tex.Jur.2d Waiver § 8.

■ If the plaintiff be correct that there had been a material breach of the

contractual obligation after January 5, 1972, the plaintiff could elect either to rescind the agreement or to affirm it and seek his damages. He could not have done both. 13 Tex.Jur.2d Contracts § 337. For our purposes on this appeal the letter was inconsistent with an intention on the part of the plaintiff to affirm the contract and sue for his damages. A genuine issue of the fact of waiver was raised such as to forbid the granting of a summary judgment on damages for the breach of the contract.

█ The pleadings of the defendant omit any affirmative defense such as waiver. Rule 94, Texas Rules of Civil Procedure. For summary judgment purposes, this omission in the non-movant's pleadings does not create a waiver of the defense where the record raises the material fact issue as to the affirmative defense. A remand is still called for. Womack v. Allstate Insurance Company, 156 Tex. 467, 296 S.W.2d 233 (1956); Insurance Company of North America v. Cash, 475 S.W.2d 912 (Tex.1971). The third point raised by the defendant is sustained.

█ We turn to a consideration of Count 1 of the plaintiff's petition. On May 25, 1972, the defendant executed and delivered to the plaintiff its promissory note in the principal amount of $19,500.00, payable on or before June 10, 1972. It is this note which is the subject matter of Count 1. The execution and delivery of this note is not challenged by the defendant but want of consideration and failure of consideration are raised by proper pleadings, and these defenses are now discussed.

The first two points in the defendant's brief attack the validity of this promissory note because of these two affirmative defenses. The defendant points out that this note was made on May 25, 1972, long after all agreements on the farmout had been declared "null and void and of no further force and effect." According to the defendant's summary judgment proof nothing was then owed by the defendant corporation; that the plaintiff was then in financial difficulty with a local bank and that he persuaded James Callaway, an executive of Texana Oil Company, to execute the promissory note in the name of the defendant corporation and payable to the plaintiff to enable the plaintiff to "collateralize his financial obligation" at the bank; and that with the execution and delivery of the note an agreement was obtained that the plaintiff would never collect on the note from the defendant. While the plaintiff attacks the credibility of this summary judgment evidence, he quite fairly concedes that fact issues are presented as to the defenses of lack of and failure of consideration at this stage of the proceedings. Winters v. Langdeau, 360 S.W.2d 515, 516 (Tex.1962). Therefore, these first two points are sustained.

By its last point, the defendant complains of the granting of the summary judgment on the contractual basis and asserts that the contract is unenforceable under the Statute of Frauds. Since we have sustained the defendant's first three points and have determined that the case must be remanded, this last point will not be discussed. We see no necessity in doing so before the final fact finder has rendered a decision.

The judgment of the trial Court is reversed and the cause is remanded.