CATTLE FEEDERS, INC., Appellant,

v.

Jo Ann JORDAN and G. F. Jordan, Appellees.

No. 1152.

Court of Civil Appeals of Texas, Corpus Christi.

March 10, 1977.

Fly, Moeller & Stevenson, Victoria, William C. Reiff, Houston, for appellant.

Marion M. Lewis and Jackie W. Marr, Guittard & Henderson, Victoria, for appellees.

OPINION

NYE, Chief Justice.

Suit was brought by Cattle Feeders, Inc., the appellant herein, against Jo Ann and G. F. Jordan, appellees, seeking specific performance of an option to purchase 91.755 acres of land in Goliad County. Trial was before a jury. From a judgment denying all relief, appeal has been perfected to this Court.

On January 15, 1971, Cattle Feeders, Inc. entered into a lease agreement with Jo Ann and G. F. Jordan covering some 91.755 acres of land in two noncontiguous tracts. This land is located north of U. S. Highway 59 in

Goliad County and is divided by a farm to market road. This acreage was part of a large tract of land in the same area which was either owned or leased by Cattle Feeders, Inc. as a part of their cattle feedlot operation. The lease stated that it was for farming, grazing and livestock feeding purposes only. The term was 5 years. The lease provided that all fences and water reservoirs constructed by the tenant were to remain on the premises. The lease, by its terms, granted Cattle Feeders an option to purchase the land in question based on certain conditions precedent, one of which was at least 90 days' written notice of such election to purchase. The option agreement provided that time was of the essence concerning exercising the option to purchase.

In either April or May of 1971, Cattle Feeders alleged that it had sent a letter to the Jordans expressing its desire to exercise the option and purchase the land. No copy of this letter was produced or introduced into evidence. On December 5, 1975, Cattle Feeders sent a letter to the Jordans in which they tendered the first purchase payment for the land pursuant to the terms set out in the option agreement. The Jordans refused this check on the grounds that they had not been notified of Cattle Feeders' intent to exercise its option as provided for in the option agreement.

Shortly thereafter, Cattle Feeders brought this suit for specific performance of the option agreement on two grounds. The first theory was that it had in fact properly exercised the option by giving written notice 90 days prior to January 15, 1976. Alternatively, Cattle Feeders urged that in the event that Cattle Feeders had not satisfied the requirement of the option agreement, the Jordans were estopped from asserting the 90 day notice requirement. The Jordans, after excepting to certain allegations in Cattle Feeders' pleadings, specifically denied Cattle Feeders' claims and brought a cross-action for immediate possession of the land. At the beginning of the trial, the Jordans filed a motion in limine to exclude from the jury all of the evidence pertaining to waiver or estoppel on the part of the Jordans. Although the trial court granted the motion, all of the excluded evidence is before us on bill of exceptions.

The jury found that no written notice of the exercising of the option was mailed to Mrs. Jordan by Cattle Feeders; that Mrs. Jordan did not receive any such notice; and that Cattle Feeders was not damaged by Mrs. Jordan's refusal to surrender possession of the land to them. Cattle Feeders does not attack these findings by the jury in this appeal. Therefore, the question as to whether or not the appellant properly exercised the written option agreement is not before us.

Through two points of error, Cattle Feeders allege that the trial court erred in refusing to permit the appellant to present to the jury, by evidence and special issues, its alternative theory that Cattle Feeders was entitled to specific performance of the option contract on equitable grounds. The appellant is relying on the language in *Jones v. Gibbs,* 133 Tex. 627, 130 S.W.2d 265 (1939, opinion adopted) to the effect that strict compliance with the terms or conditions of an option is excused when such failure is brought about by certain conduct of the optionor. The crux of Cattle Feeders' argument is that the appellees engaged in such conduct as would have excused strict compliance with the terms of the option agreement and the trial court erred in refusing to allow Cattle Feeders to present this evidence to the jury. It is, therefore, necessary that we carefully review appellant's bill of exceptions evidence to determine the validity of appellant's points of error.

Appellant Cattle Feeders' first bill of exceptions covered the testimony of a Mr. Carl Knabe who did some clearing work on the land in question. Mr. Knabe testified that he burned off brush, root-plowed, raked the land and stacked and burned roots. He testified that this work was done in June and July of 1970 and that he charged Cattle Feeders $40.00 to $42.00 per acre for the work. He testified that this work makes the land more productive and

increased the value of the land. He also testified that the value of such services at the time of the trial was approximately $80.00 per acre.

The next testimony excluded by the trial court was that of the president of the appellant's corporation, a Mr. Pat Hencerling. Mr. Hencerling testified that in June and July of 1970, Cattle Feeders executed certain documents with the appellee concerning this land. He testified that these documents were later embodied in the lease agreement. He testified that the lease agreement was part of an overall transaction between the parties to purchase the land and that the land in question was leased to Cattle Feeders and not purchased outright so as to gain a tax advantage for the appellees. He testified that the lease price was about $10.00 per acre above the going rate. He testified that he cleared the land, planted various grasses and built ponds on the land. He also testified that he had the land sloped for the feed yards and constructed a mobile home park for his employees. He testified he paid approximately $40.00 to $45.00 per acre to clear the land, several hundred dollars per acre to slope certain land and $1,500.00 each for the three ponds that were constructed. He also testified he spent $35.00 to $45.00 per acre to plant grass on approximately 5 acres to prevent erosion. He testified that the corporation spent between $10,000.00 and $12,-000.00 to construct the mobile home park. He testified that it also spent approximately $2,000.00 on fences. He stated that he spent about $60.00 per acre to fertilize some 80% of the land in 1975 and planted oats at a cost of $40.00 per acre. In summary, he testified he would not have spent any of this money if he was not under the impression that Cattle Feeders either owned the land or would acquire the land. He then pointed out on a map other land in the immediate area which the corporation had previously purchased from the appellees. He testified that all this work on the land in question was clearly visible from the road adjacent to the land and that the appellees were seen in the vicinity of the property.

On cross-examination under the bill of exceptions, Hencerling stated that he had the right, under the lease, to make all the improvements and that appellees could not have stopped any of the improvements. He admitted that he had never discussed the improvements with the appellees. Finally, Hencerling stated that the reason he made all the improvements was his reliance on the written notice to appellees.

The final testimony under the bill of exceptions was that of the appellee Jo Ann Jordan. Mrs. Jordan testified that she owned land in the vicinity of the land in question which she leased or used to graze cattle. She stated that since 1974, she visited the area about once very two weeks but between 1971 and 1975, she only occasionally visited the area. She said she observed the improvements on the subject land. She testified she always thought appellant would exercise its option but never knew this for a fact. She said her assumption was based on the improvements and the integration of the land into the remainder of the appellant's operations. She said she refused the tendered money because she was no longer bound by the agreement. She stated that prior to December 5, 1975, she received no communication from appellant indicating an intent to exercise its option. She stated that had the option been properly exercised she would have sold the land to appellant as per the agreement.

The only remaining question involved in this case is whether or not the appellant is entitled to the land in question through some act or acts of the appellees which excused or prevented the exercising of the option agreement.

■ As a general rule, in absence of equities, an optionee is held to strict compliance with the terms of an option agreement. *Zeidman v. Davis,* 161 Tex. 496, 342 S.W.2d 555 (1961); *Tidwell v. Lange,* 531 S.W.2d 384 (Tex.Civ.App.—Waco 1975, no writ). The equities which will excuse strict compliance with the terms of an option agreement are set out in *Jones v. Gibbs,* 130 S.W.2d 265 (Tex.Com.App.—1939, opinion

adopted), see pp. 272–273. These equitable principles can be summarized. An optionee will be excused from strict compliance where his conduct in failing to comply was not due to willful or gross negligence on the part of the optionee but was rather the result of an honest and justifiable mistake. In addition, equity will also excuse strict compliance where the strict compliance was prevented by some act of the optionor such as waiver or misleading representations or conduct.

There is no evidence in the record that Cattle Feeders' failure to provide appellees with timely notice of its intent to exercise the option was the result of an honest and justifiable mistake. To the contrary, the record indicates that the appellant simply never notified the appellees of its intention to exercise the option. The written notice, even if sent, was never received by appellees.

Next, we consider waiver and estoppel. Waiver, whether express or implied, is an intentional release, relinquishment, or surrender of a right that is at the time known to the party making it. In order to constitute a waiver, it is essential that there be an existing right, benefit or advantage, a knowledge (actual or constructive) of the existence and an actual intention to relinquish it. It must be a voluntary act made with full knowledge of the facts. *Rio Delta Land Company v. Johnson,* 475 S.W.2d 346 (Tex.Civ.App.—Corpus Christi 1971, writ ref'd n. r. e.). A waiver takes place where one dispenses with performance of something which he has a right to exact, and occurs where one in possession of any right, whether conferred by law or by contract, with full knowledge of material facts does or forbears to do something, and such action is inconsistent with his right or his intention to rely upon it. *Ford v. Culbertson,* 158 Tex. 124, 308 S.W.2d 855 (1958); *First National Bank of Midland v. Stoutco, Inc.,* 530 S.W.2d 619 (Tex.Civ.App.—San Antonio 1975, writ dism'd); *Zurich Insurance Company v. Wiegers,* 527 S.W.2d 511 (Tex.Civ.App.—Austin 1975, no writ); *Rice v. Travelers Indemnity Company,* 526

S.W.2d 698 (Tex.Civ.App.—Waco 1975, writ ref'd n. r. e.); *Texana Oil Company v. Stephenson,* 521 S.W.2d 104 (Tex.Civ.App.—El Paso 1975, no writ).

We have carefully reviewed all of the record and find that there is no evidence of any waiver. Even appellant's president testified there were no oral agreements concerning the lease. The only evidence of implied waiver is the fact that appellee was in the area occasionally, knew of some of the improvements to the land and that appellant was using the land. In order to establish an implied waiver, there must be a clear unequivocal and decisive act showing such a purpose. *Corrin v. Slagle,* 300 S.W.2d 657 (Tex.Civ.App.—Fort Worth 1957, writ ref'd n. r. e.); *Bounds v. Home Mut. Life & Accident Ass'n No. 1,* 290 S.W.552 (Tex.Civ.App.—Amarillo 1927, no writ). There is simply no evidence anywhere in the record that appellee waived her right to notice of appellant's intention to exercise its option.

The elements of equitable estoppel are: 1) a false representation or concealment of material fact; 2) made with actual or constructive knowledge of the facts; 3) to a party without knowledge or means of knowledge of the real facts; 4) made with the intention that it should be acted on; and 5) the party to whom it was made must have relied on or acted on it to his prejudice. *Gulbenkian v. Penn,* 151 Tex. 412, 252 S.W.2d 929 (1952); *Clifton v. Ogle,* 526 S.W.2d 596 (Tex.Civ.App.—Fort Worth 1975, writ ref'd n. r. e.); *Connally v. Home Insurance Company,* 525 S.W.2d 252 (Tex.Civ.App.—Amarillo 1975, writ ref'd n. r. e.); *Astro Sign Company v. Sullivan,* 518 S.W.2d 420 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n. r. e.). Before an estoppel will arise, there must be certainty to every intent. *Rio Delta Land Company v. Johnson, supra.* The evidence totally fails to establish any false representation or concealment on the part of the appellees. In fact, the evidence clearly shows that the appellees did nothing to prevent the appellant Cattle Feeders from exercising the option in question. Failure to prove one of the essential

elements of estoppel is fatal to the cause of action. *Barfield v. Howard M. Smith Company of Amarillo,* 426 S.W.2d 834 (Tex.Sup. 1968).

After reviewing all of appellant's bill of exceptions evidence, it is unnecessary for us to determine the correctness of the trial court's action in preventing the jury from hearing this evidence. Even if all of the evidence had been submitted to the jury, it would not have supported a judgment favorable to appellant's claim to equitable relief.

Appellant's points of error are overruled. The judgment of the trial court is AFFIRMED.